# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ARISTIDES MARTINEZ,

                            Plaintiff,

     v.

INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS, IBEW
LOCAL UNION NO. 98,

                       Defendant.

CIVIL ACTION

No. 06-04539

# OPINION

May 26, 2009                                                   Pollak, J.

      Plaintiff Aristides Martinez brought this action *pro se* against the International

Brotherhood of Electrical Workers – IBEW Local Union No. 98 ("the Union"), the labor

union that represented him while he worked at WTXF29, a Fox Television station in

Philadelphia. He alleges that the Union failed to represent him properly in violation of

the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §§ 401 -

531, and § 301 of Labor Management Relations Act (LMRA), 29 U.S.C. § 185. He

further brought claims against the Union for national origin discrimination under Title VII

of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(c); for age discrimination under the

Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 626; and for both forms of

discrimination under the Pennsylvania Human Relations Act (PHRA), 43 Pa. Stat.

1.

§§ 951 - 963.  Finally, Martinez charges the Union with negligent infliction of emotional distress.

This action is related to a civil rights suit plaintiff brought against the corporate owners of WTXF29.  That suit also was before this court and was resolved by a grant of summary judgment to the defendant employers.  *Martinez v. Fox Broad. Co.*, Civ. No. 06-04537, 2008 WL 4425099 (E.D. Pa. Sept. 30, 2008).

The Union has submitted a motion for summary judgment (Docket No. 31).  For the reasons that follow, the court will grant the motion.

I.    **Background**

As many of the circumstances pertinent to this suit were operative in the plaintiff's suit against his employers, the court will recite some of the facts with concision and incorporate the factual narrative from the disposition of the earlier action, *Fox*, 2008 WL 4425099.

Martinez describes himself as "a Hispanic America man born in Bogota, Columbia."  Pl. Certification ¶ 2.  WTXF29 hired him as a video editor in 1996.  Born in 1932, Martinez was sixty-four when he started with Fox.

In 2000, technical personnel at WTXF29 formed a local of the International Brotherhood of Electrical Workers.  Pl. Cert. ¶ 9.  Martinez resisted becoming a member of the Union.  *Id*.  He joined in the wake of a four-year collective bargaining agreement between WTXF29 and the Union that required individuals in his position to be Union members.  *Id.*; Def. Ex. 1, Collective Bargaining Agreement (CBA), Art. I § 3.  The CBA

2.

provided WTXF29 broad management rights over personnel and operations, but created a grievance procedure for any discipline against, or discharge of, a Union member.  CBA, Art. I § 5, Art. II §§ 1-2.  During the period of time at issue in this lawsuit, Union members enjoyed the protections and benefits outlined in the agreement regarding their employment and enjoyed the protections and benefits within the Union outlined by the Union's "By Laws" booklet and the IBEW constitution.  CBA; Pl. Exs. 1, 10.

Martinez's work life suffered from interpersonal conflicts, particularly with his Union brethren.  Plaintiff contends that he was subject to "hostility, resentment, and contempt" as well as "unfair treatment" by fellow Union members.  Am. Compl. ¶ 21. He alleges that one Union shop steward failed to stand up for him following a verbal attack by a manager and that another refused to furnish copies of the CBA or Union constitution that Martinez requested.  *Id*. at 25, 27.  He states that a fellow Union member, Jamel Northern, carried out a campaign of harassment against him, focused on Martinez's age and ethnicity; he further contends that Union leadership failed to intervene and stop the harassment.  *Id*. at 49, 47.  Some incidents with Northern were addressed and resolved by WTXF29, Pl. Exs. 9, 12, but the conflict continued.  Pl. Ex. 16.

On July 11, 2003, after a few years of adequate work, plaintiff received a written warning for poor job performance.  Def. Ex. 2.  Martinez received a second written warning on September 17 that outlined a series of job errors.  Def. Ex. 3.  A November 18, 2003 performance warning followed.  Def. Ex. 4.  Then on February 13, 2004, WTXF29 issued a "last and final warning" to Martinez for his unexcused failure to come

to work on Super Bowl Sunday.  Def. Ex. 5.  All the memoranda indicated that his poor

performance or misconduct could result in termination.  None of these warnings,

however, led to immediate suspension or firing.

Martinez wrote a letter to Larry DelSpechio, business agent for the Union, on July

15, 2003 that outlined the July 11 warning he received and requested a meeting to discuss

the notice as well as concerns Martinez had about staff, management, and operations

problems.  Pl. Ex. 2.  DelSpechio met informally with the plaintiff, investigated the

situation, and advocated for Martinez informally with management.  DelSp. Dep. at 51-

54.  DelSpechio did not file a grievance on behalf of the plaintiff.  Martinez wrote

DelSpechio a second time on November 29, 2003 to tell his side of the story concerning

his other recent reprimands and to make clear what Martinez thought was required to

protect Union members like himself from erroneous accusations of error.  Pl. Ex. 3.

Martinez did not request any kind of relief or advocacy in the letter.  *Id*.  Union

representatives, including DelSpechio, again met with Martinez and with station

management informally about the September and November warnings, and no formal

grievance was filed by the Union.  DelSp. Dep. at 91, 148-49.  DelSpechio discussed

Martinez's concerns about various conditions at the station, but opted not to bring those

concerns to management.  *Id*.

On April 21, 2004, WTXF29 suspended Martinez after he verbally abused a co-

worker and refused to participate in the subsequent investigation.  Pl. Ex. 14; Def. Ex. 6.

Plaintiff contends that the Union provided minimal representation to him during the

4.

investigation and questioning.  Pl. Dep. at 242-43 (discussing Union representation during Linton investigation).  The station fired Martinez on May 4, 2004, and the Union filed a grievance on his behalf on May 6, 2004.  Def. Exs. 7, 8.  On May 14, 2004, WTXF29 rejected the grievance.  The Union did not pursue arbitration under the CBA based on DelSpechio's determination that (1) the station properly fired Martinez for cause, and (2) "the Union could not prevail in arbitration."  DelSp. Decl. ¶ 4.

After his April 21, 2004 suspension, but before he was fired on May 4, Martinez wrote a letter of protest to the director of human resources at WTXF29; in it, he lodged a fresh complaint against Jamel Northern.  Pl. Ex. 14.  He also filed a formal complaint with the Union about Northern.  Pl. Ex. 16.  The Union reviewed the complaint and dismissed all the charges in a letter dated May 4, 2004.  Pl. Ex. 17.

In the fall of 2004, Martinez filed complaints against WTXF29 with both the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission.  The record does not contain evidence that Martinez pursued further remedies within the Union or that he filed complaints against the Union with any state or federal agency.  He filed the complaint in this lawsuit in October 2006; he amended the complaint in November 2007 to plead his LMRA and LMRDA claims.  This court has jurisdiction under 28 U.S.C. § 1331 for the federal claims and supplemental jurisdiction under 28 U.S.C. § 1367 for the state-law claims.

## II.  <u>Analysis</u>

The Union moves for summary judgment under Fed. R. Civ. P. 56.  The Union contends that the LMRA and LMRDA claims are barred for failure to exhaust internal remedies as well as time-barred.  With respect to plaintiff's discrimination claims under Title VII, the ADEA, and the PHRA, the Union contends that the claims are not supported by any evidence.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *IFC Interconsult, AG v. Safeguard Int'l Partners, L.L.C.*, 438 F.3d 298, 317 (3d Cir. 2006).  Facts are material if they "bear on an essential element of the plaintiff's claim."  *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002) (quoting *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir. 1999)).  Further, there is a genuine issue of material fact if "a reasonable jury could find in favor of the nonmoving party."  *Id.*

A party seeking summary judgment carries the initial burden of informing the court of the basis for its motion and identifying the portions of the record that show that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In this instance, the non-moving party would bear the burden of proof at trial.  Consequently, the moving party must show that the non-moving party cannot support his case with the evidence in the record.  *Celotex*, 477 U.S. at 325.  To rebut, the non-moving

party must identify facts that create a genuine issue of dispute for trial.  Fed. R. Civ. P. 56(e); *Hampton v. Borough of Tinton Falls Police Dept*., 98 F.3d 107, 112 (3d Cir. 1996). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge .... The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A.     *Claims brought under LMRA and LMRDA*

The Union argues that plaintiff's LMRA and LMRDA claims must be dismissed for failure to exhaust internal remedies.  Martinez responds that it was the Union's responsibility to initiate internal review and that his filing of an EEOC claim against his employer qualifies as administrative exhaustion for his LMRA and LMRDA claims.

"Under federal labor law, aggrieved employees must exhaust their [collective bargaining agreement] grievance and arbitration procedures before filing a complaint in federal court 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'"  *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530, 1537 (3d Cir. 1992) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).  The Third Circuit applies this rule to LMRA and LMRDA claims against a union and requires a plaintiff to exhaust all internal grievance and appeals procedures.  *Anjelino v. New York Times Co.*, 200 F.3d 73, 99 (3d Cir. 1999).

7.

The Union, and Martinez's complaints about his representation, are governed by the IBEW constitution.  The provision of the IBEW constitution that governed this dispute states in relevant part:

> All charges against an officer or representative of a [local union] must be presented in writing, signed by the charging party, and specify the section or sections of this Constitution, the bylaws, rules or working agreement violated.  The charges must state the act or acts considered to be in violation, including approximate relevant dates and places; and must be made within sixty (60) days of the time the charging party first became aware, or reasonably should have been aware, of the alleged act or acts.

Art. 26, § 8.  The IBEW constitution then describes the review process in §§ 8 - 11 and describes an optional appeal process in §§ 12 - 18.  Under the IBEW constitution, members can complain, and receive review of such complaints, when another member or a Union representative fails to fulfill his responsibilities to the Union or wrongfully causes economic harm to a Union member.  Art. 28, § 1(5), 1(7).  Martinez's complaints about the Union's alleged mishandling of, or inattention to, Martinez's employment and work environment concerns fall under the provisions for mandatory internal review. Accordingly, the rule of *Anjelino*, 200 F.3d at 99, applies.

Plaintiff's assertion that the onus rested with the Union to begin the internal review process is unsupported by the IBEW constitution.  Nor is Martinez's dual EEOC/PHRC filing of November 2004 pertinent to his complaints against the Union.  Martinez lodged that filing solely against his former employers, not against the Union.  There is no evidence before the court to suggest that Martinez pursued, let alone exhausted, his

remedies against the Union prior to filing the instant lawsuit.  Accordingly, his claims under LMRA and LMRDA will be dismissed.[1]

B.    *Claims under Title VII, ADEA, and PHRA*

Defendant argues that plaintiff lacks evidence to support his claims under Title VII, the ADEA, and the PHRA.  Plaintiff replies that he has propounded sufficient evidence to establish a case of discrimination and survive summary judgment.

Martinez alleges three ways that the Union discriminated against him.  First, he contends that the Union passively supported the discriminatory actions of WTXF29 against him.  *See, e.g.,* Pl. Br. at 18 ("... the decision by the employer to terminate Plaintiff was essentially made based on his ethnicity and age ... and the IBEW Local 98, Plaintiff's union stood silent, aiding and abetting the employer...").  Second, Martinez argues that the Union discriminated because it handled his representation differently from its representation of other Union members at WTXF29.  Pl. Br. at 17 ("... when he was first suspended, his union refused to grieve on his behalf ultimately, [sic] he was terminated due to lack of proper union representation, while other similarly situated younger union members also suspended and or terminated received immediate more favorable union representation ...").  Third, he asserts that Union members, specifically Jamel Northern, addressed him with a discriminatory attitude and that the Union failed to adequately protect him.  *See, e.g.,* Pl. Br. at 13 ("... union stewards were well aware of the

---

[1]    Dismissal of plaintiff's LMRA and LMRDA claims pursuant to *Anjelino*, 200 F.3d at 99, renders it unnecessary to address the Union's argument that these claims are time-barred.

on going abuse, emotively only by race national origin and age rudely by an African American [Northern] towards a Hispanic [Martinez].") (brackets in original).

In support of its motion to dismiss, the Union argues that Martinez has advanced no evidence that (1) WTXF29 acted improperly or (2) the Union acted, or refused to act, based on discriminatory animus.  Def. Br. at 7.  The Union also contends that Martinez has not identified "any similarly situated Union member who was treated differently than he was."  *Id*.

A labor union can be held liable for discrimination under Title VII if "the Union *itself* instigated or actively supported the discriminatory acts allegedly experienced by the [plaintiff]."  *Anjelino*, 200 F.3d at 95 (emphasis in original).  Title VII expressly bars unions from discriminating against their members on grounds of race, color, religion, sex, or national origin:

> It shall be an unlawful employment practice for a labor organization–
> (1)  to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;
> (2)  to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or
> (3)  to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

42 U.S.C. § 2000-e2(c).  But Title VII does not exhaust the forms of discrimination in which unions may not engage.  Under the ADEA, 29 U.S.C. § 623(c), in language that

mirrors § 2000-e2(c), labor unions are prohibited from discriminating against their

members on the basis of age.  Furthermore, the Pennsylvania anti-discrimination statute,

which covers, *inter alia*, discrimination on grounds of age and national origin, is

specifically applicable to labor unions.  43 Pa. Stat. § 955(c).

Under Title VII and the ADEA, a plaintiff can pursue his claims of discrimination

(and survive summary judgment) with either direct or circumstantial evidence.  *Makky v.*

*Chertoff*, 541 F.3d 205, 213 (3d Cir. 2008) (describing Title VII claims); *Fakete*, 308 F.3d

at 337-39 (describing ADEA claims).  There are some important differences in the

doctrine of Title VII and the ADEA, however, that concern the use of the two different

types of evidence.[2]  Because, at all events, plaintiff could proceed under some theory on

each claim with either direct or circumstantial evidence, the court has reviewed the record

for both kinds of evidence.

_____

[2]      While the Third Circuit has stated that "we routinely use Title VII and ADEA
caselaw interchangeably," *Newman*, 60 F.3d at 157, the Third Circuit has also
acknowledged that a plaintiff's use of direct or circumstantial evidence to prove
discrimination affects the legal considerations depending on whether the claim arises
under Title VII or ADEA.  *See Makky v. Chertoff*, 541 F.3d 205, 213-14 (3d Cir. 2008)
(acknowledging that a plaintiff does not need to provide direct evidence of discrimination
in order to proceed on a "mixed-motive" claim under Title VII); *Fakete*, 308 F.3d at 337-
38, 337 n. 2 (stating that such "mixed-motive" claims brought under the ADEA require
the plaintiff to present direct evidence of discrimination).  *See also Glanzman v. Metro.*
*Mgmt. Co.*, 391 F.3d 506, 512 n. 3 (3d Cir. 2004).  The Third Circuit has acknowledged
that the terminology, and differences in doctrine, in this area are confusing.  *See, e.g.,*
*Fakete*, 308 F.3d at 337 n. 2.  These differences in doctrine have very recently been
addressed in arguments before the Supreme Court in a case not yet decided (*Gross v. FBL*
*Fin. Servs., Inc.*, No. 08-441, argued March 31, 2009).

Direct evidence encompasses discriminatory statements by a decision-maker that are claimed to relate to the contested decision or adverse action.  *See, e.g., Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994) (stating, in a Title VII case, that direct evidence "can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents");[3] *Fakete*, 308 F.3d at 337 n. 2 (defining, in an ADEA case, direct evidence, by stating what it is not, and citing *Troupe*).  The record contains no direct evidence of national origin or age discrimination by Union decision-makers.  In his complaint and response to the motion for summary judgment, Martinez points to alleged failures by the Union to properly defend him against (1) discrimination by his employer and (2) discriminatory harassment by his fellow workers.  These allegations themselves are not direct evidence of discrimination, nor does any expression of invidious intent appear in the record.  Martinez also asserts that the Union treated him differently from his fellows, but proffers no direct evidence that such treatment arose from discriminatory animus.

In reviewing discrimination claims based on circumstantial evidence, under either Title VII or the ADEA, a court uses the familiar three-step burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under the *McDonnell Douglas* framework, plaintiff bears the initial burden of establishing a *prima facie* case of

---

[3]     Judge Posner's opinion for the Seventh Circuit in *Troupe* is of particular value because it offers a relatively clear and concise explanation of a term that has eluded consistent definition.  *See, e.g., Fakete*, 308 F.3d at 337 n. 2 ("while courts agree on what is *not* direct evidence ... there is no consensus on what is.").

discrimination. *Id.* If plaintiff meets this initial burden, a defendant can rebut by providing a legitimate, non-discriminatory reason for its actions. *Id.* If a defendant meets its burden of production, plaintiff has an opportunity to persuade the trier of fact by a preponderance of the evidence that defendant's proffered legitimate reason was a mere pretext concealing discrimination. *Id.*

Whether plaintiff has established a *prima facie* case is a question of law. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (*per curiam*). To establish a *prima facie* case of discrimination, a plaintiff must show that: (1) he belongs to a protected class; (2) he was qualified for his position; (3) he was subject to an adverse employment action despite being qualified; and (4) the adverse action was taken under circumstances giving rise to an inference of discrimination. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802); *see also Pivirotto v. Innovative Sys., Inc*., 191 F.3d 344, 352 (3d Cir. 1999).

Martinez has established that he was a member of two groups protected under civil rights statutes. The Union has not challenged plaintiff's averments that he is over forty and a Colombian citizen of Hispanic descent. Likewise, nothing in the record or the arguments of the defendant suggests that Martinez was anything other than qualified for his position at WTXF29 and for Union membership. At issue here, then, is whether Martinez was subject to adverse action by the Union and, if so, whether the circumstances of any such adverse action suggest discrimination. The court will begin by determining whether any of Martinez's allegations comprise "adverse action" by the Union as defined

13.

by 42 U.S.C. § 2000-e2(c), and, if so, the court will then consider whether such adverse action suggests discrimination by the Union.

1.    Decisions of the employer

Plaintiff's first allegation of discrimination, that the Union stood by passively while WTXF29 fired him for discriminatory reasons, cannot advance beyond this stage of review for two reasons.  First, under *Anjelino*, 200 F.3d at 95, the Union cannot be liable for the alleged discrimination of an employer unless it played an active role in advancing the discrimination; and there is no claim or evidence that the Union did so.  Second, this court has already determined, in *Martinez v. Fox Broad. Co.*, Civ. No. 06-04537, 2008 WL 4425099 at * 6, 8 (E.D. Pa. Sept. 30, 2008), that Martinez's employers did not discriminate against Martinez.  Because Martinez was party to that determination and fully litigated that dispositive issue, the doctrine of collateral estoppel applies.  *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209 (3d Cir. 2001).

2.    Representation of plaintiff

Plaintiff's allegation that the Union did not represent him in the same manner as other Union members qualifies as adverse employment action under these facts.  Under the CBA between the Union and WTXF29, Union members had recourse to an enumerated process for review of discipline or discharge decisions by WTXF29.  Def. Ex. 1, CBA Art. V § 8.  Union members had a right to pursue a two-step grievance procedure through their Union representatives.  *Id.*, CBA Art. II § 1.  If the outcome of the grievance process was unsatisfactory to the member, the Union then could demand arbitration of the

14.

matter on behalf of the member.  *Id.*, CBA Art. II § 2.  In this case, Martinez argues that the Union failed to lodge a grievance when he was suspended, waiting until he was actually terminated by WTXF29, and that the Union opted not to pursue arbitration after WTXF29 refused to reinstate him following review of his grievance.  The decision by Union leadership not to pursue arbitration on Martinez's behalf rises to the level of an adverse employment action because it ended Martinez's recourse to save his job under the CBA.

Martinez has not propounded sufficient evidence, as required under *Sarullo*, 352 F.3d at 797, to show that this adverse action by the Union occurred under circumstances that suggest unlawful discrimination; consequently, Martinez does not establish a *prima facie* case for this set of allegations.  Plaintiff seeks to establish discrimination by comparing his circumstances with those of other Union members.  Differential treatment, i.e., treatment that is substantially inferior to that afforded other similarly-situated persons, can serve as indirect evidence of discrimination.  *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 302 (3d Cir. 2007).  To establish such differential treatment, a plaintiff must show that his comparators are similar in all relevant respects.  *Singh v. Wal-Mart Stores, Inc.*, Civ. A. No. 98-1613, 1999 WL 374184 (E.D. Pa. Jun. 10, 1999), *aff'd* 225 F.3d 650 (3d Cir. 2000).

Martinez points to fellow Union members Mark LaValla, Michael Greenidge, Elliot Feinstein, and Jamel Northern as comparators, stating that they received fuller representation and obtained more satisfactory outcomes.  But review of the record

15.

establishes that the circumstances attendant on these four persons are not supportive of Martinez's allegation of differential treatment.  First, as to certain of the fellow Union members selected by the plaintiff, there is not sufficient evidence to prove, or to disprove, that they are appropriate comparators within the standards of *Marra* and *Singh*.  Second, as to the others in this group, the evidence makes it clear that they are not appropriate comparators.  Martinez was suspended and then fired after (1) receiving a series of warnings for poor job performance in a short space of time, including one for missing an entire work shift, and (2) verbally accosting a co-worker.  Minimally, this is the standard against which to measure the experiences of the proposed comparators.

Martinez states that "when Mark LaValla was disciplined on June 5, 2001, for behavior of cursing at female minority news reporters, he received proper representation by the Union, promptly two days after he was suspended for a week," Pl. Br. at 12. Plaintiff also includes two very general documents relating to that incident, Pl. Ex. 6. None of this establishes that LaValla's situation was similar in all relevant respects because it does not indicate that LaValla faced discipline for repeated job-related failures.

Greenidge apparently was suspended for losing station equipment and received Union representation immediately.  Pl. Br. at 12.  Based on the arguments and evidence provided by plaintiff, the court concludes that Greenidge is not a proper comparator because the record does not show that he, like Martinez, was suspended following a series of job-related failures.  Greenidge's property-based suspension appears considerably different in nature.

16.

Use of Feinstein as a comparator suffers from the shortcomings of both the prior examples.  Martinez has provided relatively little information about Feinstein, and Martinez's argument that Feinstein was "under final warning ... for persistently damaging costly equipment," Pl. Br. at 12, suggests that the circumstances of the two men differed considerably.

Finally, Martinez furnishes a reasonable amount of evidence regarding Jamel Northern's employment woes (Pl. Exs. 9, 11, 12, 13), but the court concludes that Northern's circumstances are not adequately comparable to plaintiff's.  Northern's misconduct was solely interpersonal, not performance-related, and the Union appears to have sought, and obtained, a settlement that included referral for an employee assistance program.  Pl. Ex. 13.  Martinez's misconduct primarily involved a series of errors and omissions material to his job duties, as well as interpersonal conflicts.  Pl. Ex. at 19.

Further, the record shows that Martinez "refused to cooperate during investigation" of his last incident, *id*., and the record is silent as to whether any of the proposed comparators likewise addressed management in such a recalcitrant fashion.  The willingness of a Union member to seek an agreeable outcome to alleged infractions is material to how the Union would shape its representation of that member.  Without evidence of whether these other four Union members took an uncooperative stance toward the investigation and grievance process, the court cannot conclude that, as comparators, they are similar in all relevant respects.

17.

3.     Harassment

The court construes Martinez's final set of allegations, that fellow Union members were abusive toward him and that the Union itself tolerated such conduct, as an allegation of harassment.  A plaintiff may seek redress for harassment when a "work environment [is] abusive to employees because of their race, gender, religion, or national origin." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993).  An actionable harassment claim requires evidence from the plaintiff that (1) he suffered intentional discrimination because of his membership in a protected class, (2) the discrimination was severe and pervasive and detrimentally affected him, (3) the discrimination would have detrimentally affected a reasonable person of the same protected class in that position, and (4) there is a basis for the defendant's vicarious liability.  *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001).  Concerning the last prong, "[t]he conduct of ... employees will only be attributed to a union where the union has instigated, authorized, solicited, ratified, condoned or adopted the conduct."  *Kux Mfg. Co. v. NLRB*, 890 F.2d 804, 809 (6th Cir. 1989); *cf. Anjelino*, 200 F.3d at 95.

Martinez alleges that Jamel Northern conducted a persistent campaign of harassment against him "motivated by no other reason but racial hate," Pl. Br. at 13, and apparently out of disdain for Martinez's age as well, *id*. at 14.  As to age, Martinez alleges

18.

that on a few occasions Northern called him "old man."  Pl. Ex. 21.B at 516-17.[4]  Plaintiff

also asserts that other Union members treated him poorly or ignored him based on his age

and national origin, Pl. Dep. at 252-53, and that the Union overlooked such harassment

and failed to properly protect Martinez from it when he sought redress.  Pl. Br. at 14.  But

in his deposition plaintiff could point to no conduct by Union representatives or members

that demonstrated discriminatory harassment:

> COUNSEL FOR DEFENDANT: Okay, do you have — this calls for
> a yes or no answer.  Do you have any evidence that the reason the Union
> didn't represent you was because of your age?
> PLAINTIFF: Yes.  It was part of the whole thing.  It was part of who
> I am as a person.  How old I was.  This guy, you know, he speaks with an
> accent.  He — sounds foreign.  So — so that kind of thing, you know, it's
> like, who's going to care for him.
> COUNSEL: Did any of the shop stewards ever say anything to you
> about your accent and/or your national origin, Mr. Martinez?
> PLAINTIFF: No, they never said anything personal to me.  Because
> nobody says anything personal about you those kind of things.  They say
> only behind your back.
> COUNSEL: Okay.  But you have no evidence that they ever said
> anything either in front of you or behind your back?
> PLAINTIFF: Mostly I —
> COUNSEL: Yes or no?  Yes or no, do you have any evidence —
> PLAINTIFF: No, I don't have any evidence.
> COUNSEL: Thank you.
> PLAINTIFF: But mostly, it's because of their attitude.
> COUNSEL: Okay.  And you believe they had a bad attitude —
> PLAINTIFF: Yes.
> COUNSEL:  — because of your age and your national origin?
> PLAINTIFF: And the person I am, right.  To ignore me all the time.
> COUNSEL: Okay.

---

[4] The record does contain evidence that Martinez and Northern found themselves in
conflict.  Pl. Ex. 9, 11, 12, 14, 15.  However, none of the cited evidence suggests that
discriminatory animus fueled the conflict, and plaintiff's allegations, unsupported by
evidence, are insufficient to raise any such inference.  See *Celotex*, 477 U.S. at 327.

PLAINTIFF: And that was lack of representation.

\*\*\*

COUNSEL: Do you have any information that the reason ... Larry DelSpechio did not return your calls or did not follow up with you when you showed up at the Union hall was because of your age or your national origin?

PLAINTIFF: No.  It was because — because he thought that — I'm just assuming because I don't know his thinking — if he was thinking, oh, Ari's a Latino; I'm not going to represent him.  Ari's an older man.  Maybe the age, it plays a role.  Yeah, this guy is too old over there.  Maybe this guy is not able to do the job.

COUNSEL: But you have no personal knowledge —

PLAINTIFF: No, I don't have personal knowledge.

COUNSEL: Again, you're speculating about why you believe —

PLAINTIFF: It's not a speculation.  It's an assumption.  An assumption is different than speculating.

Pl. Dep. at 252-53, 273-74.

Further, there is no basis to conclude that the Union bears responsibility for any of the alleged discriminatory harassment even if Martinez had proffered evidence to suggest it took place.  Martinez has not argued, let alone shown, that the Union "instigated, authorized, solicited, ratified, ... or adopted" whatever discomfort plaintiff may have suffered on the basis of his age or national origin.  *Kux*, 890 F.2d at 809.  He argues that the Union condoned it, but the record shows, for example, that the Union did investigate the conduct of Jamel Northern toward Martinez in 2004 and determined that it was non-actionable.  Pl. Ex. 17.  The other major incident between Martinez and Northern, from 2002, was resolved by WTXF29 in Martinez's favor.  Pl. Ex. 12.

Accordingly, the court concludes that no reasonable factfinder could find for Martinez on his harassment claim.  The record does not support the assertion that plaintiff

20.

was subject to pervasive, invidious discrimination or the further assertion that the Union bears responsibility for the conduct of Union members highlighted by Martinez.

C.     *State-law tort*

Because the court will dismiss all of plaintiff's claims brought under federal law, it will decline to exercise supplemental jurisdiction over plaintiff's state-law claim for negligent infliction of emotional distress.

**III.   <u>Conclusion</u>**

For the foregoing reasons, the court will grant defendant's motion for summary judgment.